UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Gerald Martin Brettschneider,                         Case No. 20-22041-beh

               Debtor.                                                 Chapter 13

and

In re:

    Sheri Singh-Minhas,                                    Case No. 20-22042-beh

               Debtor.                                                 Chapter 13

## ORDER DISMISSING CASES AND BARRING DEBTORS

These *pro se* debtors are unmarried co-habitants, co-debtors and serial filers. Between the couple, they have filed 18 cases since 2007, often in tandem.[1] For Mr. Brettschneider, other than receiving a standard Chapter 7

---

[1] *See* Case No. 07-25188-jes (Brettschneider) (filed on 07/06/2007 and voluntarily dismissed on 11/01/2007);
Case No. 07-25182-pp (Singh-Minhas) (filed on 07/06/2007 and dismissed for failure to file schedules on 09/20/2007);
Case No. 07-28208-svk (Singh-Minhas) (filed on 10/16/2007 and dismissed for failure to file schedules and plan on 01/16/2008);
Case No. 08-20828-pp (Singh-Minhas) (filed on 02/01/2008 and dismissed for failure to file schedules on 05/01/2008);
Case No. 08-20829-pp (Brettschneider) (filed on 02/01/2008 and dismissed for failure to pay the filing fee on 05/01/2008);
Case No. 09-21245-pp (Singh-Minhas) (filed on 02/05/2009 and dismissed for failure to file schedules on 01/10/2014);
Case No. 10-27694-pp (Brettschneider) (filed on 05/07/2010 and dismissed for failure to file schedules on 01/10/2014);
Case No. 14-20456-pp (Singh-Minhas) (filed on 01/17/2014 and dismissed for abuse on 02/11/2014);
Case No. 14-20457-pp (Brettschneider) (filed on 01/17/2014 and dismissed for abuse on 02/11/2014);
Case No. 14-33464-svk (Singh-Minhas) (filed on 10/31/2014 and dismissed for failure to file schedules on 12/18/2014);
Case No. 15-20050-mdm (Brettschneider) (filed on 01/05/2015 and closed without discharge on 06/16/2015);
Case No. 15-21079-svk (Singh-Minhas) (filed on 02/09/2015 and discharged on 11/03/2015);

discharge in 2016, all of his prior nine Chapter 13 and Chapter 7 cases have been dismissed or closed for failing to comply with Code requirements.[2] For Ms. Singh-Minhas, other than receiving a standard Chapter 7 discharge in 2015, all of her prior six Chapter 13 and Chapter 7 cases were dismissed for failing to comply with Code requirements.[3] Both debtors filed their present cases on March 13, 2020—which represents 41 days after the bar order expired from Mr. Brettschneider's last case[4]—unaccompanied by plans or schedules, and they have yet to make payments to the Chapter 13 trustee.

Throughout their many cases, these debtors have requested multiple extensions to meet their obligations under the Bankruptcy Code, each time asserting health issues, computer problems, attempts to retain counsel, or other reasons. In the instant cases, the trustee has filed motions to dismiss for failure to commence Chapter 13 plan payments within 30 days of the petition date.[5] Additionally, the Court previously issued orders requiring both debtors to show cause why these cases should not be dismissed with prejudice and

---

Case No. 16-20527-beh (Brettschneider) (filed on 01/26/2016 and discharged on 05/27/2016);
Case No. 16-32016-beh (Brettschneider) (filed on 12/15/2016 and voluntarily dismissed on 03/09/2018);
Case No. 18-24595-beh (Brettschneider) (filed on 05/09/2018 and dismissed for failure to file tax returns on 1/09/2019);
Case No. 19-20355-beh (Brettschneider) (filed on 01/15/2019 and dismissed for failure to file tax returns with a bar from refiling on 08/05/2019);
Case No. 20-22041-beh (Brettschneider) (filed on 03/13/2020); and
Case No. 20-22042-beh (Singh-Minhas) (filed on 03/13/2020).
[2] Notably, Mr. Brettschneider was subject to a 180-day bar order after a finding of abuse in Case No. 14-20457-pp. *See ECF Doc. Nos. 20, 23*.
[3] Notably, Ms. Singh-Minhas also was subject to a 180-day bar order after a finding of abuse in Case No. 14-20456-pp. *See ECF Doc. Nos. 19, 22*.
[4] *See* Case No. 19-20355-beh, ECF Doc. No. 48.
[5] *See* Case No. 20-22041-beh, ECF Doc. No. 64; Case No. 20-22042-beh, ECF Doc. No. 66.

why each debtor should not be barred from refiling for bankruptcy relief for a period of 365 days.[6]

The Court issued a notice of a combined evidentiary hearing on both the trustee's motions to dismiss and the orders to show cause.[7] Several hours before the hearing was to be held, Ms. Singh-Minhas submitted correspondence stating that neither debtor would attend the hearing, due to an asserted inability to retain counsel, asserted delay of medical procedures, and asserted continued inability to complete tax return filings.[8] For the reasons that follow, the Court will dismiss both of the debtors' cases and impose a 365-day bar on refiling.

## HISTORY

The debtors currently share an apartment in Milwaukee and their schedules reflect that they divide responsibility for expenses. Case No. 20-22042-beh, ECF Doc. No. 32, at 7. They co-own a vehicle. *Id.* at 13. And they are co-debtors on a credit card. Case No. 20-22041-beh, ECF Doc. No. 32, at 27. Their schedules also reflect that they currently store items in two storage units but do not wish to assume the storage leases. *Id.* at 24.[9]

Mr. Brettschneider's net monthly income is $1,339.65, and his income is derived from family support payments, Social Security, his pension, and

---

[6] *See* Case No. 20-22041-beh, ECF Doc. No. 66; Case No. 20-22042-beh, ECF Doc. No. 68.
[7] *See* Case No. 20-22041-beh, ECF Doc. No. 71, 73; Case No. 20-22042-beh, ECF Doc. Nos. 73, 75.
[8] *See* Case No. 20-22041-beh, ECF Doc. No. 76; Case No. 20-22042-beh, ECF Doc. No. 78.
[9] Note that the debtors' have had a long history of multiple storage units across multiple storage facilities used to store items that they have collected over the years, including model trains and other hobby items. *See, e.g.*, Case No. 14-20456-pp, Doc. No. 16; Case No. 14-33464-svk, Doc. No. 31.

Veteran's benefits. *Id.* at 29–32. Ms. Singh-Minhas's net monthly income is $1,578.38, and her income is derived from Social Security, a small pension, and a partial federal retirement payment (though she anticipates full federal retirement in 2022, which will increase her income by approximately $900 per month). Case No. 20-22042-beh, ECF Doc. No. 32, at 28–30.

The debtors have approximately $22,700 in combined non-priority unsecured debt, which is primarily credit card debt. *See* Claims Registers. The primary reason for filing for bankruptcy relief, however, appears to be Mr. Brettschneider's $54,000 priority tax debt. *See* Case No. 20-22041-beh, Claim Nos. 2, 6.[10] Indeed, Mr. Brettschneider has submitted correspondence to the Court explaining that the bankruptcy cases are necessary (1) to prevent the storage unit owners from foreclosing on the property therein and (2) to prevent the Internal Revenue Service and Wisconsin Department of Revenue from garnishing wages and/or foreclosing on any property in the storage units. *See, e.g.*, Case No. 16-32016-beh, Doc. No. 12 ("the IRS has begun to institute a levy . . . and this is the main reason this case was filed"); Case No. 18-24595-beh, Doc. Nos. 16, 19 (same).

The debtors' previous cases have been dismissed for a myriad of reasons, but they all follow the same path: the debtors initially fail to comply with Code requirements and deadlines, make repeated requests for extensions, and once the Court has granted the extensions (in some cases, repeated extensions), the debtors fail to meet the extended deadlines. At the same time, the debtors have

---

[10] Ms. Singh-Minhas has $6,000 in priority tax debt. Case No. 20-22042-beh, Claim No. 3.

maintained that they filed their cases in good faith with an honest intent to pay creditors. *See, e.g.*, Case No. 08-20829-pp, Doc. No. 22 ("I, as well as my partner, Sheri Singh-Minhas, have the honest intentions of payments to all secured creditors, such as storage companies, mortgage companies, and tax departments . . ."); Case No. 14-20456-pp, Doc. No. 16 ("The new Chapter 13 cases are being filed in good faith . . ."); Case No. 16-32016-beh, Doc. No. 61 ("I would like to see creditors being paid as soon as possible."); Case No. 18-24595-beh, Doc. No. 16 ("This case was filed in good faith. . ."); Case No. 20-22041-beh, Doc. No. 70 (". . . this case was filed in good faith.").

These assertions of good faith, however, lose their force when viewed alongside the debtors' repeated excuses for failing to meet their obligations under the Code. *See, e.g.*, Case No. 15-21079-svk, Doc. No. 60 (explaining the need for an extension to file amended schedules because Ms. Singh-Minhas was suffering from vertigo related to inner ear infections); Case No. 08-20829-pp, Doc. No. 16 (explaining the need for an extension to file schedules because Ms. Singh-Minhas must undergo a surgery for restrictive airway disease); *Id.* (explaining the need for an extension to pay filing fee because "major plumbing took place"); *Id.*, Doc. No. 38 (explaining the need for another extension to file schedules because their computer/printer failed, and because Ms. Singh-Minhas's previously-scheduled surgery was canceled); *Id.*, Doc. No. 49 (explaining the need for reconsideration on motion denying third extension to file schedules, because Ms. Singh-Minhas had another upcoming surgery related to facial bone fractures from a motor vehicle accident, as well as the

emotional trauma from the accident, and they must recover the data from the previously-failed computer); *see also id.*, Doc. No. 75 (Judge Pepper describing all of the above in detail in the Court's dismissal order). Serial requests such as these, in light of the debtors' filing history and their awareness of the deadlines imposed by the Code, suggest a lack of diligence and good faith effort at fulfilling their obligations as debtors.

What's more, the debtors' excuses are remarkably similar in each case spanning from 2008 to the latest cases, in 2020, each time resulting in non-compliance, extensions, and dismissals. *See, e.g.*, Case No. 09-21245-pp, Doc. No. 60, 63 (explaining the need for an extension to comply with court's order to amend schedules because Ms. Singh-Minhas had the flu and the couple's home had leaks in the basement and flooding, requiring them to move, as well as having scheduling problems related to the couple's joint use of one vehicle); Case No. 14-20456-pp, Doc. No. 16 (explaining the need for an extension to file schedules (and to continue the automatic stay, and to deny creditor's motion for relief from stay) because the couple's computer had issues with an "invasion of the 'conduit virus,'" the couple's government benefits were in transit and not yet arrived, Mr. Brettschneider had two upcoming surgeries related to his left foot, and there was a "major leak" in their hotel room); Case No. 16-32016-beh, Doc. No. 12 (explaining the need for an extension to file schedules because the couple was recently evicted and during the forced eviction, they lost their external hard drive, documents, and the printer power cable, which were necessary to complete their schedules and required

documents); *Id.* at Doc. No. 15 (explaining the need for another extension to file schedules and pay the filing fee because the couple had to purchase a new computer to replace the one that was damaged and corrupted in the forced eviction); *Id.* at Doc. No. 18 (explaining the need for another extension to file schedules because the new computer purchased had deficiencies in memory space and data downloaded); Case No. 18-24595-beh, Doc. No. 12 (explaining the need for an extension to file schedules because the bankruptcy petition preparation software required an update and the couple did not have the funds for such an update until their monthly benefits next arrived); *Id.* at Doc. No. 15 (explaining the need for another extension because the couple was unable to afford the software as expected); Case No. 20-22041-beh, Doc. No. 15 (explaining the need for an extension to file schedules because Ms. Singh-Minhas must undergo eye surgery to remove cataract residue and her blurry vision prevents her from working on the couples' schedules); *Id.* (explaining the need for an extension to pay the filing fee because the computer software to complete the schedules is outdated and they must pay to recover it); *Id.*, at Doc. No. 20 (explaining the need for another extension to file schedules because the COVID-19 pandemic delayed Ms. Singh-Minhas's previously-scheduled procedure); *Id.* at Doc. No. 28 (explaining the need for another extension due to another delay for Ms. Singh-Minhas's procedure); *Id.* at Doc. No. 46 (explaining the need for an extension to provide proof of service of the Chapter 13 plan because COVID-19 prevents the couple from finding a process server, Ms. Singh-Minhas's procedure has again been delayed, and because the

computer software was glitching); *Id.* at Doc. No. 53 (explaining the need for an extension to file amended plans because the computer requires additional repair, the couple had to buy a new refrigerator, and the couple wishes to find legal counsel); *Id.* at Doc. No. 70 (objecting to dismissal of case because the PACER system was glitching, Mr. Brettschneider's recent leg surgery, and failed attempts to find legal counsel); *see also* Case No. 20-22042-beh, Doc. No. 72 (objecting to dismissal of case because the PACER system was glitching, Ms. Singh-Minhas's upcoming gallbladder surgery and other various procedures, and failed attempts to find legal counsel); *Id.* at Doc. No. 78 (describing that the debtors will not appear for the evidentiary hearings because harassment by apartment managers has caused delay in their surgeries and procedures, no bankruptcy counsel will take their cases, they have spent time and energy attempting to sue storage unit owners, and Ms. Singh-Minhas's eyesight "has evolved into possible diabetic retinopathy and has made it impossible to enter data into [the computer software].").

Each request is accompanied with some form of unauthenticated documentation, such as letters from health care providers, letters from insurance agents, and receipts for various purchases.

Additionally, Mr. Brettschneider has struggled for many years to comply with 11 U.S.C. § 1308, which requires a debtor to have filed his previous four years of tax returns with the appropriate agencies before the first scheduled § 341 meeting of creditors. For example, in Case No. 18-24595-beh, the Chapter 13 trustee filed a motion to dismiss Mr. Brettschneider's case for

failure to provide tax returns to the trustee and failure to file required tax returns before the first § 341 meeting. *Id.* at Doc. No. 46. Mr. Brettschneider objected, describing that he was unaware of the above requirements, and that the 2017 state tax returns would "be sent no later than the end of this week" (referring to the week ending on November 30, 2018). *Id.* at Doc. No. 49. During a hearing held on January 8, 2019, Mr. Brettschneider reported that he had filed his 2016-2017 tax returns just recently (over a month from when he last stated they would be sent to the trustee)—which had no effect in saving his case because the Code's filing deadline had passed. *Id.* at Doc. No. 52 (audio recording of the hearing held). Yet, in the course of his next bankruptcy case, the Chapter 13 trustee reported that the federal tax returns for 2015, 2017, and 2018 remained unfiled, as well as the state tax returns for 2015, 2016, and 2017. Case No. 19-20355-beh, Doc. No. 38 (Chapter 13 trustee's motion to dismiss), Doc. No. 48 (dismissal and bar order). And the problem persists in the most recent case, where Mr. Brettschneider asked the Chapter 13 trustee to hold open the meeting of creditors pursuant to 11 U.S.C. § 1308(b)(1) to allow him more time to file the required tax returns. Case No. 20-22041-beh, Doc. No. 35 (asking the Chapter 13 trustee for an extension to provide copies of his tax returns); *Id.* at Doc. No. 57 (continuing the meeting of creditors); *Id.* at Doc. No. 70 (objecting to trustee's motion to dismiss and requesting an extension to submit tax returns). Mr. Brettschneider has ignored requirements of the Code and continues to request extensions, further suggesting a lack of genuine effort to succeed through the bankruptcy system.

# DISCUSSION

**A. Based on the applicable law, these cases will be dismissed.**

Section 1307(c) allows the Court to dismiss a Chapter 13 case for "cause." 11 U.S.C. § 1307(c). "Cause" is not defined in the Code, but the statute does identify several situations that constitute cause, one of which is "failure to commence making timely payments under section 1326." 11 U.S.C. § 1307(c)(4). This is the section of the statute under which the trustee has requested dismissal of both cases, asserting that the debtors have failed to commence making plan payments within 30 days. This is factually true, though the Court has some discretion to deny the trustee's motion and has a procedure to endorse settlements in this situation. The debtors are familiar with this District's practice of "doomsdays," wherein the Court will deny the trustee's motion to dismiss, subject to strict compliance with payment deadlines for a prescribed period going forward. In fact, in their objections to the motions to dismiss, the debtors offer to implement such a doomsday to allow this case to move forward.[11] But even if the debtors had been able to resolve the trustee's motion, failure to commence plan payments is not the only basis for dismissal.

Although not an enumerated example of cause in section 1307(c), a debtor's inability to file a confirmable plan justifies dismissal of the case. *In re Bailey-Pfeiffer*, No. 17-13506-bhl, 2018 WL 1896307, at *3 (Bankr. W.D. Wis.

---

[11] Case No. 20-22041-beh, Doc. No. 70 ("For any missed Chapter 13 payments, it is requested that a Doomsday provision take place to make up for these. There have been several hardships as mentioned in past submissions. The Doomsday provision should be six months to allow for make-up payments and new payments.").

Mar. 23, 2018). Relevant here, a debtor's failure to file required tax returns under sec. 1308 will foreclose the debtor's ability to file a confirmable plan. *See In re Long*, 603 B.R. 812 (Bankr. E.D. Wis. 2019) (failure to file returns within the timing requirements of § 1308 is an incurable defect that prevents confirmation of a Chapter 13 plan); *In re Souter*, Case No. 19-21582-gmh (Bankr. E.D. Wis. Sept. 16, 2019) (same); *In re Dean*, No. 19-30112-kmp (Bankr. E.D. Wis. Feb. 10, 2020) (if a debtor can never satisfy the requirements to confirm a plan, conversion or dismissal is warranted). Here, because the debtors' cases were filed in March 2020, the applicable four-year lookback period for filing tax returns is 2015, 2016, 2017, and 2018. The IRS's proof of claim in Mr. Brettschneider's case reveals that the 2015, 2017, and 2018 tax returns have not yet been filed. The Wisconsin Department of Revenue's proof of claim indicates that Mr. Brettschneider's income tax returns have not been filed for all applicable years. The IRS's proof of claim in Ms. Singh-Minhas's case shows that tax returns have not been filed for 2016, 2017, and 2018, though the Court acknowledges that Ms. Singh-Minhas describes that she was not required to file under applicable tax law for these years. Mr. Brettschneider, in contrast, has failed to present any evidence—or argument—that the proofs of claim in his case are incorrect. Further, there is no indication that even if the Chapter 13 trustee were to continue to hold open the meeting of creditors under § 1308(b), Mr. Brettschneider would be able to comply with an extended deadline.

Most relevant, however, is the Court's discretion to dismiss a case under § 1307 for a debtor's lack of good faith in filing the bankruptcy petition. *See In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (citing *In re Smith*, 848 F.2d 813, 816, n.3 (7th Cir. 1988)) (lack of good faith is sufficient cause for dismissal under Chapter 13). The Seventh Circuit standard for good faith is based on the "totality of the circumstances," and requires the court to inquire "whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id.* at 1357. The Seventh Circuit has described the following non-exclusive list of factors for the analysis: the nature of the debt, including whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; and how the debtor's actions affected creditors. *Id.* at 1357; *In re Gibas*, 543 B.R. 570, 596 (Bankr. E.D. Wis. 2016).

Here, Mr. Brettschneider's tax debt (and Ms. Singh-Minhas's, to any extent it exists) would be non-dischargeable in a Chapter 7 proceeding, though neither of the debtors would be eligible in a Chapter 7 proceeding due to their discharges in 2015 and 2016. *See* 11 U.S.C. § 727(a)(8). The timing of these petitions—as well as others in their history—remains suspect because the cases were filed in short order after the expiration of Mr. Brettschneider's most recent bar on refiling. The timing of all of their petitions suggest serial filers with an intent to evade creditors for over a decade. Much of their non-tax debt arose because of their insistence in keeping their belongings in various storage

units in both California and Wisconsin, failing to stay current with those monthly payments, and blaming the storage companies for far-reaching alleged violations of their rights. By their own admission, the pattern of petitions was motivated by the debtors' desire to prevent foreclosure on their property in the storage units, by both the storage facilities and the tax authorities, and to prevent the tax authorities from levying Mr. Brettschneider's wages (when he is working, though he is not now). These motives, if considered in a vacuum, may provide a reasonable reason to file for Chapter 13 bankruptcy relief. But when viewed in context of the debtors' decade of bankruptcy filings, they are indicative of bad faith: Mr. Brettschneider has consistently failed to file his taxes, they have failed to pay down the tax debt, or work with the storage facilities to make payments, retrieve their property, or otherwise use the bankruptcy process to improve the deadlock in which they have placed these creditors.

Based on all of the above, and because the debtors are ineligible to receive relief in Chapter 7 proceedings, the Court concludes that there is cause to dismiss these cases. The remaining question is whether the Court will impose bars on refiling for these debtors.

**B.     Based on the applicable law, the Court finds these debtors should be barred from refiling for a period of 365 days from the date of this order.**

The bankruptcy court's authority to bar a debtor from refiling for bankruptcy relief arises through sections 105(a), 109(g), and 349(a). Section 105(a) permits the bankruptcy court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions in this title." The Court may, *sua sponte*, take any action to "enforce or implement court orders or rules, or to prevent an abuse of process." § 105(a). Courts have held that the court's equitable powers combined with explicit language under the Code allow it to dismiss a case with prejudice to the debtor's ability to refile. *In re Lloyd*, 37 F.3d 271, 275 (7th Cir.1994); *see also In re Gibas*, 543 B.R. at 600.

Section 109(g)(1) of the Bankruptcy Code allows courts to impose a 180-day refiling bar if a case is 0 due to a debtor's willful failure to abide by orders of the court. 11 U.S.C. § 109(g)(1) ("no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if— . . . the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case"). And under section 349(a), a court may preclude a debtor from refiling after the dismissal order (for periods of time even longer than 180 days), upon a finding of "cause." *See In re Gibas*, 543 B.R. at 600 (collecting cases imposing refiling bars in excess of 180-days). Repeat filings, coupled with a debtor's failure to prosecute or complete cases, are indicative of a lack of good faith and an attempt to abuse the bankruptcy process; such conduct creates an inference of deliberate, willful behavior. *See In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill. 1985); *In re Pike*, 258 B.R. 876, 883 (Bankr. N.D. Ohio 2001); *In re Duruji*, 287 B.R. 710, 714 (Bankr. S.D. Ohio 2003); *In re King*, 126 B.R. 777, 781 (Bankr. N.D. Ill. 1991). All of the above are considered to determine "cause" for a bar under section 349(a).

By failing to appear for the October 20, 2020 evidentiary hearing, the debtors effectively have conceded what is clear from the record—abundant cause to bar both debtors from refiling, including a lack of good faith, willful failure to abide by court orders, and a deliberate intent to abuse the bankruptcy system. Their excuses in these two cases are a mirror image of the excuses they have presented in several of their prior cases: a pattern of delay in complying with filing requirements, asserted medical excuses, innumerable computer failures, and a haboob of other troubles.

The Court recognizes that somewhere in the debtors' requests for extensions, there appeared to be a few reasonable explanations for delays. Certainly, medical office hours have been thrown out of whack due to limitations imposed by the COVID-19 pandemic, which first befell the country around the time the debtors filed these cases. But the Bankruptcy Code includes some immutable deadlines, and so, for example, the Court denied the third extension request for each debtor to file schedules and a Chapter 13 plan, pursuant to 11 U.S.C. § 521(i)(3). Case No. 20-22041-beh, Doc. No. 29; Case No. 20-22042-beh, Doc. No. 29. The debtors then managed to get their schedules and plan filed within three days (though, without an accompanying valid proof of service). Almost immediately thereafter, however, debtors asked for an extension to file valid proofs of service and to delay commencement of their Chapter 13 plan payments, and requested to file new, amended Chapter 13 plans because of (1) faulty computer systems requiring costly repairs, (2) a malfunctioning refrigerator, and (3) anticipated legal expenses related to

asserted causes of action against the storage unit owners. In their responses to the Court's orders to show cause and the trustee's motions to dismiss, they again assert that health problems, scheduled surgeries, and computer glitches prevent them from complying with the Code's and Court's deadlines. Further, they give a lengthy explanation of attempting to find legal counsel for not only their storage unit difficulties, but also to assist in their bankruptcy cases. Yet, over seven months into their respective cases, no lawyer has been retained, and more importantly, no valid Chapter 13 plans for reorganization have been filed or served and no funds have been paid into their plans for the benefit of creditors.

Although *pro se* litigants, both debtors have ample experience with the bankruptcy court and bankruptcy forms. They understand what is required to initiate a case, including the submissions of plans and schedules, completing service, paying filing fees, and the requirements of having filed past tax returns. Yet they file their cases without these basic components, seek delays by extensions, and take no steps to benefit their creditors—secured, unsecured priority, nor unsecured non-priority. Health and time may not be on their side, but the record reflects that these debtors choose the wrong battles. If they wish to obtain the benefits of the Bankruptcy Code, they must meet its obligations in good faith. To date, in this case and in their patterns of repeat filings, they have not done so.

## ORDER

Accordingly, the Court GRANTS the Chapter 13 trustee's motions to dismiss both Case No. 20-22041-beh and Case No. 20-22042-beh, effective immediately. Further, the Court BARS these debtors, Mr. Gerald Martin Brettschneider and Ms. Sheri Singh-Minhas, from refiling a bankruptcy case under any chapter of Title 11 for 365 days from the date of this Order.

Dated: October 30, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge